**No. 17-51060**

# In the United States Court of Appeals for the Fifth Circuit

WHOLE WOMAN'S HEALTH, ET AL.,

*Plaintiffs-Appellees*,

*v.*

KEN PAXTON, ATTORNEY GENERAL OF TEXAS, ET AL.,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Western District of Texas, Austin Division
No. 1:17-cv-00690

## MOTION TO UNSEAL PORTIONS OF THE RECORD

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

SCOTT A. KELLER
Solicitor General
scott.keller@oag.texas.gov

HEATHER GEBELIN HACKER
BETH KLUSMANN
Assistant Solicitors General

*Counsel for Defendant-Appellant*
*Ken Paxton*

CHRISTOPHER D. HILTON
christopher.hilton@oag.texas.gov

*Counsel for Defendants-Appellants*
*Faith Johnson, Sharen Wilson, and*
*Abelino Reyna*

# INTRODUCTION

Defendants respectfully request that this Court unseal most of the sealed record in this case: ROA.5535-7046.[1] Most of the sealed record contains no confidential information. Instead, it includes abortion policies and procedures that are relevant to the issues in this case, and the public is presumptively entitled to access these judicial records. Redacted versions of some of the sealed documents are already in the record, but there is no justification for the unredacted versions to remain under seal. And some documents and information under seal are either entirely, or partially, in the unsealed record.

As this Court explained in a recent case involving Plaintiff Planned Parenthood of Greater Texas, the Court "disfavors the sealing of briefs or portions of the record, where the parties on appeal have not articulated a legal basis for the sealing." Order at 2, *Planned Parenthood of Greater Tex. Family Planning & Preventative Health Servs. Inc. v. Smith*, No. 17-50534 (5th Cir. Aug. 1, 2017) (per curiam). Further, the Court's letter in this case dated January 16, 2018 informed the parties that the Court has "a strong presumption of public access to our court's records, and the court scrutinizes any request by a party to seal pleadings, record excerpts, or other documents." Briefing Notice at 3-4, *Whole Woman's Health v. Paxton,* No. 17-51060 (5th Cir. Jan. 16,

---

[1] Defendants' counsel conferred with plaintiffs' counsel about their clients' position on this motion on the morning of March 13, 2018, but plaintiffs' counsel responded that they were "unable" to give their position. Separately, plaintiffs' counsel asked defendants' counsel on February 28, 2018 whether defendants would oppose a motion for plaintiffs to view the sealed record; defendants' counsel responded that day that defendants would not oppose such a motion from plaintiffs. Plaintiffs filed their motion to view the sealed record on the afternoon of March 13, 2018.

1

2018). The Court directed that "Counsel moving to seal matters must explain in particularity the necessity for sealing in our court" and "Counsel do not satisfy this burden by simply stating that the originating court sealed the matter." *Id.* at 4.

Plaintiffs have not asked this Court to keep any portions of the record under seal. If they do desire to keep these documents under seal, plaintiffs bear a substantial burden. They cannot demonstrate an interest favoring nondisclosure that outweighs the "strong presumption" of public access to judicial records. *United States v. Holy Land Found. for Relief & Dev.*, 624 F.3d 685, 690 (5th Cir. 2010).

## Background

On May 26, 2017, the Texas Legislature passed Senate Bill 8. Act of May 26, 2017, 85th Leg., R.S., ch. 441, § 6, 2017 Tex. Gen. Laws 1164, 1165-67 (eff. Sept. 1, 2017) ("SB8"). The challenged provisions of SB8, codified as Texas Health and Safety Code sections 171.151-.154, prohibit "dismemberment abortion." A "dismemberment abortion" is defined as "an abortion in which a person, with the purpose of causing the death of an unborn child, dismembers the living unborn child and extracts the unborn child one piece at a time from the uterus through the use of clamps, grasping forceps, tongs, scissors, or a similar instrument." Tex. Health & Safety Code § 171.151. A violation of section 171.152 carries a criminal penalty. *Id.* § 171.153. Plaintiffs contend this law constitutes an unconstitutional burden on the right to an abortion.

The sealed record in this case contains various categories of documents. As an initial matter, the sealed record does contain some confidential state abortion rec-

ords, ROA.4927-5534,[2] and Defendants do *not* move to unseal these confidential records. But Defendants do move to unseal the remaining categories of documents in the sealed record: (1) unredacted versions of admitted trial exhibits containing medical guidelines and procedures for one of the plaintiff clinics, ROA.5535-84; (2) admitted trial exhibits containing standing orders for inducing fetal demise before surgical abortion procedures, ROA.6497-6501 and ROA.6480-82, which are already included in the unsealed record at ROA.4309-16; (3) plaintiffs' interrogatory responses submitted as exhibits to a motion to compel and corresponding motion to seal, ROA.5632-5838; (4) exhibits to those interrogatory responses containing information about plaintiffs' practices providing second-trimester abortions, ROA.6043-76; (5) exhibits to another motion to preserve confidentiality and corresponding motion to seal which contain standing orders, guidelines, policies, and blank patient forms, ROA.6078-7038; (6) minutes of civil proceedings, ROA.5629-31, 6042, 6077, 7039-46;[3] and (7) the district court docket sheet, ROA.5585-5628. All of these documents—except the confidential state records—should be unsealed.

---

[2] Abortion statistics kept by the Texas Department of State Health Services (DSHS) are found at ROA.4927-5240. Abortion complications reports are also kept by DSHS and may be found at ROA.5241-5534. These documents are confidential pursuant to state law. *See* Tex. Health & Safety Code § 245.011(d); *id.* § 171.006(g).

[3] These documents simply memorialize the appearances of counsel and judicial staff at court proceedings and do not appear to contain any confidential information.

# ARGUMENT

## I. This Court Disfavors the Sealing of Record Material, and a Party Requesting that Record Material be Kept Under Seal Must Request Permission and Articulate a Legal Basis for Doing So.

The Court has advised that it "disfavors the sealing of briefs or portions of the record where the parties on appeal have not articulated a legal basis for the sealing." Order at 2. This Court further stated that "we have repeatedly required parties to justify keeping materials under seal." *Id.* Unsealing the judicial records at issue here is appropriate because plaintiffs—the parties that would seek to keep the exhibits under seal—have not requested permission to keep these documents under seal, nor can they articulate a legal basis for doing so.

## II. There is a Strong Presumption of Public Access to Judicial Records.

"[T]he public has a common law right to inspect and copy judicial records." *SEC v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *Belo Broad. Corp. v. Clark*, 654 F.2d 423, 429 (5th Cir. 1981)). The decision whether to keep these exhibits under seal therefore must be analyzed against the "strong presumption that all trial proceedings should be subject to scrutiny by the public." *Holy Land*, 624 F.3d at 690 (quoting *United States v. Ladd*, 218 F.3d 701, 704 (7th Cir. 2000)); *accord, e.g.*, *United States v. Pickard*, 733 F.3d 1297, 1302 (10th Cir. 2013) (noting that the "strong presumption of openness can be overcome where countervailing interests heavily outweigh the public interests in access to the judicial records" (internal quotation marks omitted)); *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006) (stating that "a strong presumption in favor of access is the starting point," and the

party seeking to seal "must articulate[ ] compelling reasons supported by specific factual findings . . . that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process" (citations and internal quotation marks omitted)).

Stated differently, there is a "presumption of public access to judicial records." *Van Waeyenberghe*, 990 F.2d at 848 (citing *Littlejohn v. BIC Corp.*, 851 F.2d 673, 678 (3d Cir. 1988)).[4] This presumption "serves to promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of its fairness." *Id.* at 849 (quoting *Littlejohn*, 851 F.2d at 682).[5] Although these public interests are extremely important, "the common law right of access to judicial records is not ab-

---

[4] While this Court in *Van Waeyenberghe* previously reserved the question whether this presumption could be deemed "strong," 990 F.2d at 848 n.4, the Court in *Holy Land* has since joined the consensus among other circuits by holding that this is indeed a "strong" presumption favoring public access, 624 F.3d at 690.

[5] *Accord, e.g.*, *IDT Corp. v. eBay*, 709 F.3d 1220, 1222 (8th Cir. 2013) ("This right of access bolsters public confidence in the judicial system by allowing citizens to evaluate the reasonableness and fairness of judicial proceedings, . . . and to keep a watchful eye on the workings of public agencies. . . . It also provides a measure of accountability to the public at large, which pays for the courts." (citations and internal quotation marks omitted)); *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 161 (3d Cir. 1993) ("Access to civil proceedings and records promotes public respect for the judicial process and helps to assure that judges perform their duties in an honest and informed manner." (internal quotation marks omitted)); *Wilson v. Am. Motors Corp.*, 759 F.2d 1568, 1571 (11th Cir. 1985) (per curiam) ("[T]he real focus of our inquiry is on the rights of the public in maintaining open records and the check[] on the integrity of the system.") (internal quotation marks omitted)).

solute." *Id.* at 848. But "the . . . court's discretion to seal the record of judicial proceedings is to be exercised charily." *Id.* (quoting *FSLIC v. Blain*, 808 F.2d 395, 399 (5th Cir. 1987)). Thus, "the power to seal court records must be used sparingly in light of the public's right to access." *Holy Land*, 624 F.3d at 690.

## III. Plaintiffs' Purported Interests in Confidentiality Do Not Outweigh the Strong Presumption Favoring the Public's Common-Law Right of Access to Judicial Records.

In considering whether to unseal the exhibits, this Court must balance the strong presumption favoring the public's common-law right of access against the interests favoring nondisclosure. *Van Waeyenberghe*, 990 F.2d at 848. But an interest favoring nondisclosure must be significant to overcome this strong presumption. *See, e.g.*, *Pickard*, 733 F.3d at 1302 ("The party seeking to overcome the presumption of public access to the documents bears the burden of showing some significant interest that outweighs the presumption."); *Bank of Am. Nat'l Trust & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 800 F.2d 339, 344 (3d Cir. 1986) (court must "balance the factors favoring secrecy against the common law presumption of access"); *Newman v. Graddick*, 696 F.2d 796, 803 (11th Cir. 1983) ("The historic presumption of access to judicial records must be considered in the balance of competing interests." (citing *Belo*, 654 F.2d at 434)). Plaintiffs cannot overcome the strong presumption of public access to judicial records.

### A.  The Court should unseal the unredacted versions of defendants' trial exhibits (ROA.5535-84).

During trial, the district court admitted unredacted versions of defendants' exhibits (DX) 56 and 64 into evidence without objection. ROA.1902-03, 2246. These

exhibits are copies of Plaintiff Planned Parenthood of Greater Texas Surgical Health Services (PPGTSHS)'s Manual of Medical Standards and Guidelines, which set out policies and procedures for performing the abortions at issue in this lawsuit. After the exhibits were admitted into evidence, plaintiffs asked the trial court to replace the admitted exhibits with redacted versions. ROA.2889-90. The redacted versions removed significant portions of each document, including information that is relevant to this case. *Compare* ROA.5535-62, 5563-84 (under seal), *with* ROA.4398-4425, 4444-4465. The trial court granted plaintiffs' request over defendants' objection and the redacted versions of DX-56 and DX-64 were admitted into evidence in addition to the unredacted versions under seal. ROA.2891.

Plaintiffs argued in the trial court that the redacted information in DX-56 and DX-64 is "proprietary" and irrelevant. *See* ROA.2889-90 (arguing that "these documents contain a variety of other policies that are not relevant to this case and are proprietary, such as around physical facilities, personnel policies, things of that nature that just have no relevance" and "we just don't see any need for the remaining proprietary materials to be public"). This purported interest, however, is insufficient to overcome the strong presumption of public access to judicial records in the circumstances of this case. And any argument that the documents are not relevant is undermined by the trial court's decision to admit the entire documents into evidence.

1. As an initial matter, Planned Parenthood Federation of America (PPFA)'s Medical Standards and Guidelines were also admitted into evidence. ROA.4486-4771. Plaintiff PPGTSHS's Medical Standards and Guidelines are modeled after

PPFA's Guidelines, which all affiliates of Planned Parenthood—including the Texas affiliates involved in this litigation—are required to follow. ROA.2229-30, 5535. A motion to seal PPFA's Guidelines was filed by PPFA, and it was *denied* by the district court. ROA.1582-83. PPFA's Guidelines are also redacted, but not to the great extent that the PPGTSHS Guidelines are.

For instance, the section labeled "Client Information and Informed Consent" is redacted from PPGTSHS's Guidelines. ROA.4405-07. But the same section is not redacted from the PPFA Guidelines in the unsealed record. ROA.4576-78. Similarly, the section "Medical Screening and Evaluation" is redacted from the PPGTSHS Guidelines, ROA.4407-08, but it is not redacted from the PPFA Guidelines. ROA.4492-93. This inconsistency demonstrates plaintiffs' lack of a legitimate justification to maintain any of these materials under seal. But at minimum, these portions of the PPGTSHS Guidelines should not remain under seal.

2. Plaintiffs also cannot articulate a basis for the rest of the PPGTSHS Guidelines to remain under seal. Plaintiffs' argument that the information contained in these documents is irrelevant is not a valid basis for keeping the unredacted exhibits under seal, especially since the documents were admitted into evidence with no objection. ROA.1902-03, 2246. Even if relevance were a valid basis for sealing documents, plaintiffs have redacted information that is clearly relevant to the claims and defenses at issue in this case.

To start, the entire Guidelines in context are relevant to this case because they describe the abortion patient's experience and treatment from the time they enter the facility to the time they leave, as well as any follow-up procedures. The Court

must consider whether SB8 results in an undue burden on the right to abortion, so the patient's experience without SB8 shows what, if any, additional burden there would be on this process.

Specific parts of the Guidelines that were redacted by plaintiffs are also relevant for additional reasons. For example, plaintiffs redacted the entire "Approved Services" section of the Guidelines, including language stating the various procedures they perform. *Compare* ROA.5535, 5563 (under seal), *with* ROA.4398, 4444. Not all abortion procedures are implicated by SB8, *see* Tex. Health & Safety Code § 171.151, so which procedures are already occurring is relevant to determining how many abortions are affected by SB8.

Plaintiffs also redacted the entire "Personnel" section of the Guidelines that sets out the requisite training and skills for doctors and other personnel who perform abortions at PPGTSHS. *Compare* ROA.5537-39, 5564-66 (under seal), *with* ROA.4400-02, 4445-47. But this is relevant because plaintiffs argued below that their doctors and other personnel lack the requisite skill to perform an injection to cause fetal demise before dismembering a fetus. ROA.2967-68.

Plaintiffs redacted the "Client Selection" section of the Guidelines, which describes numerous medical conditions that Plaintiff PPGTSHS's physicians evaluate before performing an abortion and conditions under which a woman could not receive an abortion. *Compare* ROA.5540-41, 5567-68 (under seal), *with* ROA.4403-05, 4448-49. This is important information because the district court's opinion states that requiring fetal demise before dismemberment abortion could result in some women not being able to receive an abortion, but these Guidelines identify numerous

9

medical conditions that already result in women not receiving abortions. ROA.1603-04.

Plaintiffs also redacted the entire "Medical Screening and Evaluation" sections from both DX-56 and DX-64, which contain information about the screening procedures used to assess a patient's suitability to receive an abortion. This is also relevant to the determination of whether a woman may receive an abortion. *Compare* ROA.5544-46, 5570-71 (under seal), *with* ROA.4407-09, 4451-52. In particular, plaintiffs redacted language from this section in DX-64 that is in tension with plaintiffs' argument that procedures to cause fetal demise before surgical abortions are risky. ROA.5570. Similarly, plaintiffs redacted the sections titled "Referral" from both exhibits. *Compare* ROA. 5555-56, 5583, *with* ROA.4418-19, 4464. If clinics already refer patients with potential complications outside the clinic, it would not be an additional burden for clinics to refer a patient whose fetal demise procedure failed for some reason to another provider.

Plaintiffs also redacted the entire section labeled "Post-Procedure Management," which describes the process clinicians must use in inspecting the remains of a fetus after a dismemberment abortion to ensure all parts have been removed. *Compare* ROA.5583-85, 5579-82, *with* ROA.4416-4418, 4460-63. This is relevant both as part of the procedure at issue in the lawsuit and as an indicator of the brutality of dismemberment abortion—one of the State's interests in prohibiting it.

Finally, plaintiffs redacted the sections titled "Follow-Up Visit," which describe the follow-up visit the clinic must offer after the abortion. *Compare* ROA.5555,

5582, *with* ROA.4418, 4463. This contradicts the district court's conclusion that requiring fetal demise would result in an undue burden because it may require multiple trips to the clinic. ROA.1604-05. This information indicates that multiple trips are already required.

The information that plaintiffs redacted from the sealed versions of DX-56 and DX-64 is relevant to this case and those exhibits should be unsealed.

3. Plaintiffs' argument that the redacted information is "proprietary" is unsupported by the facts and is not a valid basis for keeping the unredacted exhibits under seal. To start, even if certain information is proprietary—the property of a business—that does not mean that it is necessarily confidential. Plaintiff PPGTSHS's counsel asserted in the trial court that the redacted information is proprietary, but if plaintiffs intended to argue that the Guidelines are trade secrets, they did not provide any explanation as to why abortion policies, guidelines, and medical procedures would be trade secrets.

A trade secret "is any formula, pattern, device, or compilation of information used in one's business, and which gives an opportunity to obtain an advantage over competitors who do not know or use it." *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 874 (5th Cir. 2013) (quoting *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1123 (5th Cir. 1991)). To determine whether a trade secret exists under Texas law, the Court considers six factors, weighed "in the context of the surrounding circumstances":

> (1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of the measures taken by him to guard the secrecy of the

11

information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Wellogix*, 716 F.3d at 875 (quoting *In re Bass*, 113 S.W.3d 735, 739–40 (Tex. 2003) (quoting Restatement (First) of Torts § 757 cmt. b. (1939)); *see also Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 267 (5th Cir. 2007).

The redacted information pertains to medical procedures used to perform abortions. This is not information that is confidential or a trade secret to non-profit abortion providers like the Planned Parenthood plaintiffs, especially because the other plaintiffs are their business competition, and they have shared the information freely with them during this lawsuit. Indeed, the National Abortion Federation posts similar guidelines for their providers on their public website.[6]

Notably, the district court agreed that similar materials were not confidential when it denied plaintiffs' motion to preserve the confidentiality of more recent versions of these Medical Standards and Guidelines adopted by Plaintiffs PPGTSHS, Planned Parenthood Center for Choice, and Planned Parenthood South Texas Surgical Center. ROA.1461. There are no proprietary or confidentiality concerns implicated by DX-56 and DX-64, and this Court should unseal the unredacted version of these exhibits.

---

[6] *See* National Abortion Federation, *2018 Clinical Policy Guidelines for Abortion Care* at 32, 37 (2018), https://5aa1b2xfmfh2e2mk03kk8rsx-wpengine.netdna-ssl.com/wp-content/uploads/2018_CPGs.pdf [https://perma.cc/25Q4-7LN7].

### B. The Court should unseal the other documents in the sealed record (ROA.5629-7046).

1. The documents comprising DX-33 and DX-36, which are clinic protocols for surgical abortion, were admitted into evidence and are already part of the unsealed record. ROA.4309-13, 4314-16. They are also included in the sealed record. ROA.6497-6501, ROA.6480-82. There is no reason these documents should remain sealed.

2. The remaining documents in the sealed record were not admitted as exhibits during trial, but were submitted as exhibits to pretrial motions filed in district court.

a. The documents at ROA.5632-5831 are interrogatory responses from the plaintiffs. These documents do not contain any confidential information, and the interrogatory responses are already in the unsealed record. ROA.872-1010.

Plaintiffs' interrogatory responses (ROA.5632-6041) were submitted as exhibits to a motion to compel and motion to file those exhibits under seal by defendants.[7] ROA.6043-57. Defendants moved to file these exhibits under seal as they were required to under the protective order in the case, ROA.5835-38, but disputed the confidential designation of these documents. ROA.1076. In response to that dispute, plaintiffs filed a motion to preserve confidentiality of only the exhibits to those interrogatory responses (referred to as "Exhibit A"). ROA.1075-80. The only parts of these documents that plaintiffs have ever argued are confidential are the exhibits to

---

[7] A two-page excerpt from Plaintiff PPGTSHS's 2017 Medical Standards and Guidelines was also included as an exhibit to these motions. ROA.5832-34. These two pages are not confidential for the same reasons as the entire Guidelines. *See supra* p.14-15.

13

the responses, the "Exhibit A" documents. ROA.5653, 5679, 5702, 5725, 5752-53, 5777, 5799. These "Exhibit A" documents are included in the sealed record twice (once as attachments to the motion to compel, and once as exhibits to the motion to seal that followed the motion to preserve confidentiality). ROA.6043-57, 6058-76. The district court denied the motion to preserve confidentiality, except with reference to physician names included on the "Exhibit A" documents that were not on the witness list or plaintiffs in the lawsuit. ROA.1460.

But all except five of these names are already in the unsealed record, in a document filed by *plaintiffs*. ROA.846-852. Plaintiffs admitted that all the remaining names were publicly known abortion providers, both in their acknowledgement that these physicians are readily identified as abortion providers on the internet, ROA.1080, and also by their designation of only three physicians from the plaintiff clinics as not publicly known and requesting to use pseudonyms for those providers. ROA.574. The only non-publicly known providers listed on the Exhibit A documents are listed under pseudonym. ROA.6046, 6050, 6062. Thus, there is no reason why the exhibits to the interrogatory responses should not be unsealed as well.

b. The remaining documents under seal, ROA.6078-7038, were part of a motion filed by plaintiffs to preserve the confidentiality of those documents under the protective order. These documents in the sealed record include Medical Standards and Guidelines adopted by Plaintiffs PPGTSHS,[8] Planned Parenthood South Texas Surgical Center, and Planned Parenthood Center for Choice, ROA.6078-6472, as well

---

[8] These guidelines are more recent versions than the guidelines admitted into evidence as DX-56 and DX-64. ROA.5535-84.

as blank patient charts and forms and standing orders for the plaintiff abortion clinics, ROA.6453-7038. These documents are also included in the sealed record twice (once as exhibits to the motion to preserve confidentiality and once as exhibits to the motion to seal that followed the motion to preserve confidentiality). ROA.6078-6556, 6557-7038. Defendants contested the confidential designation of these documents and plaintiffs filed a motion to preserve confidentiality; plaintiffs made similar arguments as to the supposedly confidential and proprietary nature of these documents, even though they are just medical procedures, guidelines, and blank patient chart forms. ROA.1235-42.

The district court denied the motion to preserve confidentiality in its entirety except for one document (DX-36)—which was later admitted into evidence in open court during the trial with no objection and not placed under seal. ROA.1461, 2748-49, 4314-16. Medical procedures cannot be considered confidential for the reasons explained above. *See supra* p.12-13. And blank patient charts and forms cannot be considered confidential documents if they are given to every patient at plaintiffs' clinics. There is no reason that any of these documents should remain under seal.

## Conclusion

This Court should grant Defendants' motion and issue an order directing that the record materials at ROA.5535-7046 be unsealed.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Jeffrey C. Mateer
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

/s/Scott A. Keller
Scott A. Keller
Solicitor General
scott.keller@oag.texas.gov

Heather Gebelin Hacker
Beth Klusmann
Assistant Solicitors General

*Counsel for Defendant-Appellant Ken Paxton*

Christopher D. Hilton
christopher.hilton@oag.texas.gov

*Counsel for Defendants-Appellants Faith Johnson, Sharen Wilson, and Abelino Reyna*

## CERTIFICATE OF SERVICE

On March 14, 2018, this motion was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Scott A. Keller
SCOTT A. KELLER

## CERTIFICATE OF COMPLIANCE

This motion complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 4,006 words, excluding the parts exempted by Rule 27(a)(2)(B); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Scott A. Keller
SCOTT A. KELLER